FILED

2008 Feb-13  PM 04:41
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

R. DENICE PRATER,         )
                                )
           Plaintiff        )
                                )
        vs.                )        Case No.  4:06-cv-01699-HGD
                                )
DON GASKIN, et al.,         )
                                )
          Defendants    )

## **MEMORANDUM OPINION**

This matter is before the undersigned United States Magistrate Judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73, Fed.R.Civ.P. Plaintiff, R. Denise Prater, filed a complaint on August 29, 2006, against defendants, Don Gaskin and Lynn Gaskin, individually, and doing business as Gaskin's Back Alley Motors (BAM).  (Doc. #1, Complaint)

In her initial complaint, Prater listed six claims.  In Count I, she alleges a violation of the Truth in Lending Act (TILA) (15 U.S.C. §§ 1601, *et seq.*) regarding her credit-purchase of a 1993 Toyota Tercel on or about October 19, 2005.  Count II alleges that defendants failed to comply with the requirements of §§ 7-9A-611 and 7-9A-616, *Alabama Code* (1975), pertaining to the sale or disposition of secured

collateral, asserting that Back Alley Motors failed to notify Prater in writing of the intended disposition of the above-referenced Toyota Tercel after it was repossessed by defendants.   Count III alleges common law conversion of the Toyota by defendants in connection with the repossession of the Toyota on or about July 14, 2006.

In Count IV, plaintiff alleges a violation of the TILA regarding her credit-purchase on February 13, 2006, of a 1993 Volvo 850.  In Count V, she asserts that defendants failed to comply with the requirements of §§ 7-9A-611 and 7-9A-616, *Alabama Code* (1975), pertaining to the sale or disposition of secured collateral, asserting that Back Alley Motors failed to notify Prater in writing of the intended disposition of the above-referenced Volvo 850 after it was repossessed by defendants. Count VI asserts a claim of common law conversion in connection with the repossession of the 1993 Volvo 850 on or about July 14, 2006.

Defendants filed an Answer and Counterclaim on September 28, 2006, denying each of plaintiff's claims and counterclaiming that plaintiff was guilty of breach of contract with regard to her failure to make payments as agreed on the Toyota Tercel. The claim also requests compensation for damages to the vehicle. (Doc. #11, Answer and Counterclaim).

On October 24, 2006, plaintiff filed an Answer to Counterclaim and included what she referenced as "Affirmative Defenses (And/Or CounterClaims in Reply)". (Doc. #17, Answer to Counterclaim).  In these "affirmative defenses or counterclaims in reply," plaintiff denies defendants' counterclaim and adds three more claims.

Count VII alleges that defendants failed to account for the disposition of repossessed property with regard to the repossession of the above-referenced Toyota Tercel in violation of § 7-9A-616(b), *Alabama Code* (1975), requesting an award of the $500 penalty provided in § 7-9A-625(e)(5) or (6), *Alabama Code* (1975), as amended.  Count VIII alleges a failure on the part of defendants to properly account for the disposition of the repossessed Volvo 850 in violation of the same Alabama statutes and also requests an award of statutory damages of $500.  Count IX alleges that defendants are liable for usury in violation of § 5-19-3, *Alabama Code* (1975).

Defendants filed what they describe as an "Answer to Counter-Counterclaim" on November 6, 2006, denying plaintiff's claims asserted within her Answer to Counterclaim.  (Doc. #19, Answer to Counter-Counterclaim).

On March 19, 2007, defendants filed an Amended Answer and Counterclaim. (Doc. #32, Amended Answer and Counterclaim).  In this pleading, defendants reassert their denial of the claims set out in plaintiff's Counts I-VI and their

Counterclaim.  However, they do not reassert their denial of plaintiff's claims VII through IX.  Presumably, they consider their initial denial to be sufficient.

Plaintiff asserts that on October 19, 2005, she purchased a 1993 Toyota Tercel for the agreed-upon price of $1,750.  Taxes in the amount of approximately $56.88 also were assessed on the purchase.  Prater made a down payment of $399, leaving an amount financed of $1,407.88.  She received no TILA disclosure statement at the time of her purchase.  However, she later discovered that the loan balance before her first purchase was $3,600.00.  Thus, the undisclosed finance charge on this purchase was $2,192.12.  According to plaintiff, based on 30 bi-weekly payments of $120, the approximate annual percentage rate on the amount financed was in excess of 180%. (Doc. #1, Complaint).

According to plaintiff, defendant Don Gaskin applied for and had his name added to the Certificate of Title on the Toyota Tercel as lienholder.  However, according to Prater, there was no security agreement executed by Prater providing any right of repossession, or, if there was such an agreement, Prater was not in default as would trigger the right for BAM or the Gaskins to repossess the vehicle.  However, on or about July 14, 2006, BAM repossessed the Toyota and also unlawfully converted to their own use other personal property contained therein.  (*Id.*).

Plaintiff further asserts that she and BAM entered into another consumer credit contract on February 13, 2006, for the purchase of a 1993 Volvo 850 for the agreed-upon price of $2,500 plus $81.25 in taxes.  The down payment was $750, leaving an amount financed of $1,831.25.  Again, she learned that the loan balance before the first payment was set by defendants was $3,600.  This amounted to an undisclosed finance charge of $1,768.75, making the approximate annual percentage rate, based on 30 bi-weekly payments of $120, in excess of 120%.  (*Id.*).

During the discovery process, several problems arose.  One such problem was manifested by the filing by plaintiff on January 25, 2007, of a Motion to Deem Facts Admitted.  In this motion, plaintiff asserts that she served defendants with Requests for Admissions, Interrogatories, and a Request for Production to which defendants failed to respond.  (Doc. #24, Motion to Deem Facts Admitted).

Initially, this motion was denied based on defendants' counsel's assurance that the requests would be responded to by March 19, 2007.  (See Doc. #31, Order entered March 16, 2007, denying without prejudice Motion to Deem Facts Admitted).  When counsel for defendants failed to provided the promised responses, plaintiff's motion was renewed.  (Doc. #33, Renewed Motion to Deem Facts Admitted).  No response was made by counsel for defendants to the renewed motion.  Consequently, the court entered an order on March 27, 2007, granting plaintiff's Renewed Motion to Deem

Facts Admitted.  (Doc. #34, Order).  In that order, the Court held that all of the facts

contained in plaintiff's Request for Admissions were deemed admitted and

established for purposes of all further proceedings in this action.  Based on this order,

the facts deemed admitted are as follows:

## Request for Admissions To Don Gaskin

COMES NOW the Plaintiff pursuant to F.R.Civ.P. Rule 36 and
requests Defendant **Don Gaskin** to admit or deny the truthfulness of the
following statements, in the time and manner provided by law:

1.    Lynn Gaskin and Don Gaskin are joint owners of an
unincorporated business with the trade name of "Gaskin's Back Alley
Motors."

2.    Lynn Gaskin and/or Don Gaskin doing business as Gaskin's
Back Alley Motors was a "creditor" within the meaning of said term
pursuant to the Truth in Lending Act, 15 U.S.C. § 1602(f) in each of the
credit sales contracts with Plaintiff.

3.    During the period of October 1, 2004 through February 27,
2006, Gaskin's Back Alley Motors regularly extended, or regularly
offered to extend, consumer credit for which a finance charge is or was
imposed in the sale of automobiles.

4.    Lynn Gaskin and/or Don Gaskin doing business as Gaskin's
Back Alley Motors, as of October 1, 2005, regularly extended consumer
credit which was payable by agreement in more than four installments
or for which the payment of a finance charge was required.

5. Plaintiff purchased a 1993 Volvo 850 from Gaskin's Back Alley Motors on October 19, 2005 and a 1993 Toyota Tercel on February 13, 2006. [*sic*].[1]

6. The documents attached to the Complaint as Exhibits A and B are genuine copies of the originals.

The following statement applies to Requests 7 through 23:

Concerning the sale of the 1993 Toyota to Denice Prater on October 19, 2005:

7. The Cash Price before adding Sales Tax was $1,750.00.

8. The correct state, city, and county sales tax was $56.88.

9. Prater made a down payment of $399.00.

10. The Amount Financed was $1,407.88.

11. The Loan Balance after application of the down payment and before Prater's first regular payment was $3,600.00.

12. The Finance Charge imposed upon Prater was $2,192.12.

13. The schedule and timing of payments was 30 bi-weekly payments of $120.00.

14. The Total of Payments, including the down payment, was scheduled to be $3,999.00.

---

[1] The bills of sale, referenced as Exhibits A and B to the original complaint, reflect that the Toyota was purchased in October 2005 and the Volvo was purchased in February 2006, not vice versa as is stated here.

15.   The cost of credit expressed as the Annual Percentage Rate for this transaction was [blank].[2]

17.[3] The Defendants did not provide to Plaintiff, prior to her signing of the contract documents, any document disclosing the cost of the credit extended to her.

18.   The Defendants did not provide to Plaintiff, prior to her signing of the contract documents, any document disclosing the amount of the "Finance Charge," using that term.

19.   The Defendants did not provide to Plaintiff, prior to her signing of the contract documents, any document disclosing the amount of the "Annual Percentage Rate," using that term.

20.   The Defendants did not provide to Plaintiff, prior to her signing of the contract documents, any document disclosing that a security interest was retained in the vehicle by the Seller.

21.   The Defendants did not provide to Plaintiff, prior to her signing of the contract documents, any document disclosing the "Amount Financed," using that term.

22.   Pursuant to *Code of Alabama* § 5-19-3, on any credit sale for an amount financed under $2,000.00, interest is limited to 15% per annum of the first $750.00 and 10% per annum of the balance over $750.00 and under $2,000.00.

---

[2] There is no amount stated in the plaintiff's Requests for Admissions to Don Gaskin.  *See* Doc. #24.   Thus, there is no admission regarding the cost of credit for this transaction in this paragraph.  However, that percentage is easily gleaned by simple mathematics from other admissions by Gaskin.

[3] There is no paragraph number 16 in the plaintiff's Requests for Admissions to Don Gaskin. *See* Doc. #24.

23.  The amount of the credit service charge or time-price differential charged by Gaskin's Back Alley Motors to Plaintiff on the credit sale of the Toyota Tercel was $2,192.12.

The following statement applies to Request 24 through 40:

Concerning the sale of the 1993 Volvo to Denice Prater on February 13, 2006:

24.  The Cash Price before adding Sales Tax was $2,500.00.

25.  The correct state, city and county sales tax was $81.25.

26.  Prater made a down payment of $750.00.

27.  The Amount Financed was $1,831.25.

28.  The Loan Balance after the application of the down payment and before Prater's first regular payment was $3,600.00.

29.  The Finance Charge imposed upon Prater was $1,768.75.

30.  The schedule and timing of payments was 30 bi-weekly payments of $120.00.

31.  The Total of Payments, including the down payment, was scheduled to be $3,999.00. [sic][4]

32.  The cost of credit expressed as the Annual Percentage Rate for this transaction was not disclosed to Plaintiff in writing on or before February 14, 2006.

---

[4] The actual amount, as gleaned from the pleadings and other evidence, not including tax, is $4,350.00.

33.  The Defendants did not provide to Plaintiff, prior to her signing of the contract documents, any document disclosing the cost of the credit extended to her.

34.  The Defendants did not provide to the Plaintiff, prior to her signing of the contract documents, any document disclosing the amount of the "Finance Charge," using that term.

35.  The Defendants did not provide to Plaintiff, prior to her signing of the contract documents, any document disclosing the amount of the "Annual Percentage Rate," using that term.

36.  The Defendants did not provide to Plaintiff, prior to her signing of the contract documents, any document disclosing that a security interest was retained in the vehicle by the Seller.

37.  The Defendants did not provide to Plaintiff, prior to her signing of the contract documents, any document disclosing the "Amount Financed," using that term.

38.  Pursuant to *Code of Alabama* § 5-19-3, on any credit sale for an amount financed under $2,000.00, interest is limited to 15% per annum of the first $750.00 and 10% per annum of the balance over $750.00 and under $2,000.00.

39.  The amount of the credit service charge or time-price differential charged by Gaskin's Back Alley Motors to Plaintiff on the credit sale of the Volvo 850 was $1,768.75.

40.  The amount of the credit service charge or time-price differential that Gaskin's Back Alley Motors charged to Plaintiff on the credit sale of the Volvo 850 exceeds 15% per annum of the first $750.00, and 10% per annum of the balance over $750.00 and under $2,000.00.

41.   No documents were sent to Plaintiff notifying her of the intended disposition of the Toyota Tercel after repossession from Plaintiff.

42.   No documents were sent to Plaintiff notifying her of the intended disposition of the Volvo 850 after repossession from Plaintiff.

43.   No accounting statement was sent to Plaintiff concerning the post-repossession disposition of the Toyota Tercel.

44.   No accounting statement was sent to Plaintiff concerning the post-repossession disposition of the Volvo 850.

45.   Lynn Gaskin made all the computations and recorded same upon the contract documents for both credit sales to Plaintiff.

46.   Pursuant to the written contract documents signed by Plaintiff, she was not required to maintain property insurance upon either the Volvo 850 or the Toyota Tercel.

47.   Plaintiff was not in default of the terms of her written agreement concerning the Volvo 850 when this vehicle was repossessed by Defendants.

48.   Plaintiff was not in default of terms of her written agreement concerning the Toyota Tercel when this vehicle was repossessed by Defendants.

49.   The personal property contents of the Toyota and Volvo were not identified and logged by the Defendants after these vehicles were repossessed from the Plaintiff.

50.   Lynn Gaskin prepared and signed all of the receipts for payments made by Plaintiff on both accounts.

(Doc. #24, Exhibit, Request for Admissions to Don Gaskin).

In her affidavit, submitted in favor of her Motion for Summary Judgment, Denice Prater states that, on October 19, 2005, she purchased a 1993 Toyota Tercel at Gaskin's Back Alley Motors from Lynn Gaskin for $1,750 plus tax in the amount of $56.88. She was required to make a down payment of $399. After signing a Bill of Sale, Lynn Gaskin told her that she would be paying $60 per week or $120 bi-weekly for 30 weeks. No mention was made at that time that insurance was required to be kept on this vehicle. (Prater Aff. at ¶¶ 1-3).

Weeks later, when she made her first regular installment payment, Prater found out that she owed a balance of $3,480. When Prater inquired about this, Lynn Gaskin advised her that it was "interest." This made the total cost of the Toyota to be $3,935.88. (*Id.* at ¶ 6). According to Prater, no one told her, in writing or orally before she signed the Bill of Sale, that she was going to have to pay more than $1,750 plus sales tax on the car. Had she known this, she would not have purchased the vehicle. (*Id.* at ¶ 7).

In February 2006, Prater went back to BAM and purchased a 1993 Volvo for $2,500 plus $81.25 in sales tax. She made a $750 down payment and was told that her payments for this vehicle would be $60 per week or $120 bi-weekly. Lynn Gaskin advised her that she would have to obtain insurance on this vehicle, but no

mention was made, orally or in writing, that defendants retained a right to repossess the Volvo if she failed to make payments or keep insurance on it. (*Id.* at ¶¶ 9-11).

According to Prater, as of July 14, 2006, she was not behind on her payments and had not broken her agreements for these two purchases from Gaskin's Back Alley Motors. Nevertheless, on that date, the Tercel was repossessed by defendants. An attempt was made to repossess the Volvo on that same date. Prater initially refused to surrender the keys but later relented. Prater estimated the value of the Tercel at the time of repossession to be $400 and the value of the Volvo to be $2.500. (*Id.* at ¶¶ 12-16).

After she lost the cars, Prater was unable to get to work; and she lost her job on July 28, 2006. She also lost $200 in cash, some music CDs, and a cell phone ear piece that were inside the Volvo when it was repossessed. Including the cash, she estimates the total value of this lost property to be $250. (*Id.* at ¶¶ 19-20).

After filing, and then withdrawing, earlier motions for summary judgment, plaintiff filed the pending motion for summary judgment on July 10, 2007. (Doc. #40, Plaintiff's Motion for Summary Judgment). Documents included with this motion include plaintiff's affidavit, the bills of sale for each vehicle and receipts for payments made to defendants by plaintiff. Plaintiff requests summary judgment with regard to Counts I through VI. No mention is made of Counts VII through IX, except

for a footnote in plaintiff's motion for summary judgment wherein she states that she "waives the claims plead (*sic*) in Counts VI and VIII."  (Doc. #40, Motion for Summary Judgment at fn.1).  However, plaintiff does address Count VI despite her claim that she is waiving her claims pled in Counts VI and VIII.   The only explanation for this is that this is a typographical error and that she possibly meant she waives her claims as to Counts VII and VIII because she does not address Count VII in her brief.  Consequently, the Court will consider Counts I through VI for summary judgment, will assume that she is waiving her claim in Counts VII and VIII and that Count IX is not addressed in or a part of this motion for summary judgment. Further, plaintiff has not sought summary judgment in her favor with respect to defendants' counterclaim for breach of contract and damages to the Toyota.  No response has been made by defendants to plaintiff's motion for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure, which sets out the procedural rules for summary judgment motions,  reads in relevant part as follows:

> (c) . . .  The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> * * * * *
>
> (e) . . .  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may

not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Rule 56(c) and (e), Fed.R.Civ.P.

The Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.*, requires a creditor to make certain disclosures with regard to credit transactions like the ones described above, such as the annual percentage rate for credit extended to a consumer and the number, amount, due dates or period of payments scheduled to repay the indebtedness.  In particular, 15 U.S.C. § 1638 states in pertinent part:

Transactions other than under an open end credit plan

(a) Required disclosures by creditor
For each consumer credit transaction other than under an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable:
    (1) The identity of the creditor required to make disclosure.
    (2)(A) The "amount financed", using that term, which shall be the amount of credit of which the consumer has actual use. This amount shall be computed as follows, but the computations need not be disclosed and shall not be disclosed with the disclosures conspicuously segregated in accordance with subsection (b)(1) of this section:

        (i) take the principal amount of the loan or the cash price less downpayment and trade-in;

(ii) add any charges which are not part of the finance charge or of the principal amount of the loan and which are financed by the consumer, including the cost of any items excluded from the finance charge pursuant to section 1605 of this title; and

(iii) subtract any charges which are part of the finance charge but which will be paid by the consumer before or at the time of the consummation of the transaction, or have been withheld from the proceeds of the credit.

(B) In conjunction with the disclosure of the amount financed, a creditor shall provide a statement of the consumer's right to obtain, upon a written request, a written itemization of the amount financed.  The statement shall include spaces for a "yes" and "no" indication to be initialed by the consumer to indicate whether the consumer wants a written itemization of the amount financed.  Upon receiving an affirmative indication, the creditor shall provide, at the time other disclosures are required to be furnished, a written itemization of the amount financed. For the purposes of this subparagraph, "itemization of the amount financed" means a disclosure of the following items, to the extent applicable:

(i) the amount that is or will be paid directly to the consumer;

(ii) the amount that is or will be credited to the consumer's account to discharge obligations owed to the creditor;

(iii) each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person; and

(iv) the total amount of any charges described in the preceding subparagraph (A)(iii).

(3) The "finance charge", not itemized, using that term.

(4) The finance charge expressed as an "annual percentage rate", using that term.  This shall not be required if the amount financed does not exceed $75 and the finance charge does not exceed $5, or if the amount financed exceeds $75 and the finance charge does not exceed $7.50.

(5) The sum of the amount financed and the finance charge, which shall be termed the "total of payments".

(6) The number, amount, and due dates or period of payments scheduled to repay the total of payments.

(7) In a sale of property or services in which the seller is the creditor required to disclose pursuant to section 1631(b) of this title, the "total sale price", using that term, which shall be the total of the cash price of the property or services, additional charges, and the finance charge.

(8) Descriptive explanations of the terms "amount financed", "finance charge", "annual percentage rate", "total of payments", and "total sale price" as specified by the Board.  The descriptive explanation of "total sale price" shall include reference to the amount of the downpayment.

(9) Where the credit is secured, a statement that a security interest has been taken in (A) the property which is purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type.

(10) Any dollar charge or percentage amount which may be imposed by a creditor solely on account of a late payment, other than a deferral or extension charge.

(11) A statement indicating whether or not the consumer is entitled to a rebate of any finance charge upon refinancing or prepayment in full pursuant to acceleration or otherwise, if the obligation involves a precomputed finance charge.  A statement indicating whether or not a penalty will be imposed in those same circumstances if the obligation involves a finance charge computed from time to time by application of a rate to the unpaid principal balance.

(12) A statement that the consumer should refer to the appropriate contract document for any information such document provides about nonpayment, default, the right to accelerate the maturity of the debt, and prepayment rebates and penalties.  . . .

15 U.S.C. § 1638.

This law and Regulation Z, 12 C.F.R. § 226.17, require the disclosure of the Amount Financed, Finance Charge, Timing and Schedule of Payments, Total of Payments, the Total Price including Down Payment, Annual Percentage Rate, and the fact that the Seller has retained a Security Interest and the nature thereof, all in a "clear and conspicuous manner," which includes the requirement that the disclosures be accurate.  According to the undisputed evidence presented by plaintiff, defendants have failed to provide any of the foregoing disclosures.

With regard to Count I and the Toyota, Prater relied on the Bill of Sale statement that the total price of her purchase would be $1,750.  However, she later discovered that the total cost of the vehicle was $3,999.  Thus, she was charged an undisclosed finance charge of $2,192.12.

With regard to Count IV and the Volvo, Prater relied on the Bill of Sale price total of $2,581.25 to be the true price.  The true cost of credit, including the sale price was $4,350.  Thus, she was charged an undisclosed finance charge of $1,768.75.

Failure to comply with TILA's disclosure requirements subjects the creditor to liability for "any actual damages sustained . . . as a result of the failure [to disclose]" and a civil penalty of "twice the amount of any finance charge" up to a cap of $1,000.  *See* 15 U.S.C. § 1640(a)(1) and (2)(A)(I).  Although plaintiff alleges that she is entitled to damages equaling the total amount of interest she was charged by defendants, this is not necessarily so.  Had plaintiff actually paid for each vehicle in full, then there is no doubt that she would be entitled to that amount as actual damages.  Since that amount is greater than $500 for each vehicle, she would be entitled to the statutory maximum penalty of $1,000 for each vehicle.  However, she did not pay for either of her purchases in full.  In one case, she made payments from November 2005 to June 2006.  In the other, she made payments from February 2006 until June or July 2006.  Thus, she never paid the full balance due on either vehicle.

Therefore, her damages are equal to the *pro rata* share of her payments that constituted interest on each transaction, not the full amount levied by the Gaskins and BAM.  Likewise, the amount of statutory damages due cannot be determined until the amount of actual damages suffered by plaintiff has been determined.   Thus, while plaintiff is clearly entitled to summary judgment as to Counts I and IV of the complaint, the amount of damages will have to be determined through testimony of witnesses.  Since a jury demand has been made in this case, this determination will be made through a jury trial to be set at a later date.

Plaintiff also requests summary judgment with regard to Counts II and V.  In these counts, she makes a claim for damages under the Alabama Uniform Commercial Code and, in particular, under § 7-9A-625, *Alabama Code* (1975), for defendants' failure to provide her with notice regarding the post-repossession sale of each vehicle.

The Alabama Uniform Commercial Code § 7-9A-611(b) states, in pertinent part:

> (b) Notification of disposition required.   Except as otherwise provided in subsection (d), a secured party that disposes of collateral under Section 7-9A-610 shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition.

§ 7-9A-611(b), *Alabama Code* (1975), as amended.  Thus, to be liable under § 7-9A-611(b), the defendant must be a "secured party."  The Alabama Commercial Code defines a "secured party" as:

> a person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding;

§ 7-9A-102(72)(A), *Alabama Code* (1975).

There is no evidence that any security agreement exists in this case.  The thrust of plaintiff's causes of action are that defendants took certain actions without any legal right to do so.  Because there is no evidence presented that is sufficient to demonstrate the existence of a security interest, the motion for summary judgment as to Counts II and V is due to be denied.  Defendants' inappropriate disposition of the property is addressed in plaintiff's conversion claim.

In Counts III and VI, plaintiff requests judgment in her favor with regard to her claim that defendants are guilty of conversion of the Toyota and Volvo that are the subjects of this litigation, as well as the personal property that was in the vehicles at the time they were repossessed.  She requests both compensatory and punitive damages.

To constitute conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or

misuse of another's property.  Conversion requires "a wrongful exercise of dominion

over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has

. . . the immediate right to possession.*"  Empiregas of Gadsden, Inc. v. Geary*, 431

So.2d 1258, 1260 (Ala. 1983).

Plaintiff has made out a *prima facie* case of conversion to which defendants

have failed to respond.  Plaintiff has alleged the value of the Toyota to be $400 and

the value of the Volvo to be $2,500.  She has valued the personal property in the

Volvo at $250.  Defendants have not challenged these valuations.  Therefore, these

amounts are established for the purpose of setting compensatory damages.

Punitive damages may be awarded in a conversion case when there is evidence

of wanton conduct.  "Conversion is an intentional tort. . . . 'The intent required is not

necessarily a matter of conscious wrongdoing.  It is rather an intent to exercise a

dominion or control over the goods [of the plaintiff] which is in fact inconsistent with

the plaintiff's rights.'"  *Johnson v. Northpointe Apartments*, 744 So.2d 899, 904 (Ala.

1999) (quoting W. Keeton, Prosser & Keeton on Torts § 15 (5th ed. 1984)).

"Intentional torts ordinarily carry punitive damages, if the jury chooses to award

them."  *Tillis Trucking Co. v. Moses*, 748 So.2d 874, 887 n.12 (Ala. 1999).  Indeed,

"[p]unitive damages are recoverable in a conversion case when the evidence shows

legal malice, willfulness, insult, or other aggravating circumstances."  *Schwertfeger*

*v. Moorehouse*, 569 So.2d 322, 324 (Ala. 1990).  "'[P]unitive damages [in an action for conversion] are justified when the evidence discloses the conversion to have been committed in known violation of law and of owner's rights, with circumstances of insult, or contumely, or malice.'"  *Roberson v. Ammons*, 477 So.2d 957, 961 (Ala. 1985) (quoting *Carolina Cas. Ins. Co. v. Tisdale*, 46 Ala.App. 50, 57, 237 So.2d 855, 859-60 (1970)).  "The conversion committed in known violation of the law and of plaintiffs' rights is itself legal insult, contumely, or malice sufficient to justify an award of punitive damages."  477 So.2d at 961.

While punitive damages are recoverable under the right conditions, outlined above, there is insufficient evidence in the record to rule as a matter of law that plaintiff is entitled to punitive damages or the amount, if she is so entitled.  Because there is a jury demand by plaintiff that has not been withdrawn, these issues will have to be decided in a jury trial.

## CONCLUSIONS

Based on the evidence submitted in this case, the Court concludes as follows:

(1)     Plaintiff's Motion for Summary Judgment with regard to Counts I and IV is due to be granted.  The amount of damages will be determined by jury trial to be set for a later date.

(2)     Plaintiff's Motion for Summary Judgment with regard to Counts II and V is due to be denied.

(3)     Plaintiff's Motion for Summary Judgment as to Counts III and VI is due to be granted.  Furthermore, based on the evidence presented, plaintiff is entitled to compensatory damages as to Count III in the amount of $400, and compensatory damages as to Count VI in the amount of $2,750.  Whether plaintiff is entitled to punitive damages and, if so, in what amount, are questions that must be presented to a jury, along with the remaining Count IX of the complaint.

(4)     Plaintiff is waiving her claims in Counts VII and VIII; therefore, these claims are due to be dismissed.

(5)     Plaintiff is entitled to an award of costs, which amount shall be determined by the court based on evidence to be submitted by plaintiff at the conclusion of this litigation.

(6)     Defendants' counterclaim for breach of contract and damages to the Toyota Tercel is still pending and will be included in the jury trial.

The date and time for the trial, as well as any pretrial deadlines not already established, will follow by separate order.  A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 13th day of February, 2008.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE